181 P.3d 480

**In the Matter of Kathleen J. Elliott.**

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Dwight Douglas RICE, Defendant,**

and

**Kathleen J. Elliott, Real Party in Interest–Appellant.**

No. 32265.

Supreme Court of Idaho, Boise, February 2008 Term.

March 28, 2008.

Hampton & Elliot, Boise, and Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Dennis Benjamin argued.

Hon. Lawrence G. Wasden, State Attorney General, for respondent. Jessica Lorello argued.

W. JONES, Justice.

## I. STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

Ms. Elliott and Mr. Roark represented Dwight Douglas Rice, a criminal defendant in *State v. Rice*, Case No. H0500227. In that case, prosecuted by Ms. Armstrong, Rice was charged with enticing children over the Internet, and subsequently found guilty.

On Friday, July 22, 2005, the court held an in-chambers meeting regarding the prosecution's request for information on the anticipated testimony of a potential witness of the defense. At this hearing, the district court ruled as follows:

> So, what I am going to do is I am going to order that the Defense will either provide access to their expert to allow the State to interview the expert with regard to his opinion and the basis of those opinions prior to trial or in the alternative the Defense shall provide to the State a summary of testimony which it anticipates it will elicit from its expert witness and the basis of the witness's opinions.

Given this choice, Ms. Elliott agreed that she "would produce a summary." On Monday July 25, 2005, the district court formally entered its order, adding additional substance (indicated in italics below):

> [T]he court orders that the defense must either make its expert available for interview by the state as to his anticipated testimony or opinions or defense counsel may provide to the state a written summary of the substance of the testimony of the witness. Such a summary must be *adequate to allow the state to be aware of the basis of the expert's opinion. Failure to provide such an adequate summary or to allow the interview of the witness will result in the court continuing the trial after the expert renders his opinion to allow the state at least two days time to prepare for cross-examination and financial sanctions to reimburse the state for any costs incurred in delaying the trial.*

The next morning on July 26, 2005, the district court—presumably referring to its order on the previous day that the defense produce a witness summary or report—asked Ms. Elliott whether she had provided any additional information to the State regarding the defense's witness, and Ms. Elliott indicated that she had not. The court immediately took a recess and upon returning, with no further discussion, the district court then summarily found Ms. Elliott in criminal contempt of court: "I find the defense counsel in criminal contempt of the court. The Court will reserve punishment until the conclusion of trial. It appears that there has been a willful disobeying of the Court's order . . . ."

The district court eventually provided Ms. Elliott the opportunity to explain her actions on Monday, July 26, 2005.

She then stated that she

> relied upon the court's ruling when the court said failure to provide such an adequate summary or to allow interview of the witnesses will result in [the] court continuing the trial after the expert renders his opinion to allow the State at least two day's time to prepare for cross-examination and financial sanction to reimburse the State for any cost incurred in delaying the trial.

She further explained that she believed that the order was "three-fold," as she believed it allowed her to select among an "interview, or a summation, or . . . a leeway of two days granted if the witness was (sic) called and that the defense would pay the cost of that." In the district court's Order Re: Finding of Contempt, it stated that it did not find credible Ms. Elliott's explanation, and that "having it her way was more

important than the inconvenience caused to citizen jurors, opposing counsel, and witnesses and any disruption that might occur in the court's calendar." The parties do not dispute that the defense never called the witness on whom the supposedly-disruptive missing report or summary was lacking. In addition, the supposedly-inconvenienced jury had yet to be sworn.

## II. STANDARD OF REVIEW

In *In re Weick*, 142 Idaho 275, 127 P.3d 178 (2005), this Court stated the standard under which it reviews contempt sanctions:

The sanction or penalty imposed under a contempt order is reviewed under an abuse of discretion standard. The determination of whether a sanction or penalty should be imposed is within the discretion of the trial court. This Court does not weigh the evidence, but rather reviews the district court's findings to determine [whether] they are supported by substantial and competent evidence. Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. When the trial court exercises its discretion, this Court will not interfere unless the lower court clearly abused its discretion.

*In re Weick*, 142 Idaho at 278, 127 P.3d at 181 (internal citations omitted).

■ Although the trial court has discretion over whether to impose a sanction, it only has discretion to impose a sanction insofar as the application of its discretion yields its conclusion of guilt beyond a reasonable doubt. *Steiner v. Gilbert*, 144 Idaho 240, 246, 159 P.3d 877, 883 (2007) ("To impose a sanction in a case involving criminal contempt, the trial court must find all of the elements of contempt beyond a reasonable doubt.").

## III. ANALYSIS

■ The definition of "willful" is " 'an indifferent disregard of duty' or 'a remissness and failure in performance of a duty' but not a 'deliberately and maliciously planned dereliction of duty,' " and this definition "applies to contempt proceedings." *In re Weick*, 142 Idaho at 281, 127 P.3d at 184 (2005). In other words, an order must be violated willfully in order to hold in contempt one who violated the order.

Because Ms. Elliott complied with the district judge's order, she did not willfully violate it. The order provided four options: (1) elect not to call the witness; (2) supply a summary to the State; (3) make the witness available to the State; (4) delay a decision on the issue and then pay the costs of doing so if she chose to call the witness. When Ms. Elliott chose the fourth option, she complied with the order.

Because she complied with the order, she should not be held in contempt of court for failing to comply with it.

■ The State argues that the district court did not intend to make the trial delay with payment of the cost of the delay an available option, but rather that provision of the order was a penalty or sanction for failure to make the witness available for interview or to provide a summary of testimony. At best that is a possible interpretation of the order. Nevertheless, Ms. Elliott's interpretation of the order is also a reasonable interpretation of the order. To find a person in criminal contempt for willfully disobeying a court order, the order must be clear and unequivocal. *See United States v. Fleischman*, 339 U.S. 349, 370–71, 70 S.Ct. 739, 750, 94 L.Ed. 906, 918–19 (1950) (Douglas, J., dissenting) ("failure to take action required by an order can be punished only if the action is clearly, specifically, and unequivocally commanded by that order."); *see also Terminal R. Ass'n of St. Louis v. United States*, 266 U.S. 17, 29, 45 S.Ct. 5, 8, 69 L.Ed. 150, 155 (1924) ("In contempt proceedings . . . a decree will not be expanded by implication or intendment beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought, and the facts found must constitute a plain violation of the decree so read."). At the very least, this Court cannot say that the order of the court was clear and unequivocal or not susceptible to different reasonable interpretations.

This case seems to be nothing more than a legitimate misunderstanding between the court and counsel as to what was expected. Under such circumstances, there was no justification for summarily imposing criminal contempt upon Ms. Elliott, especially when there was nothing to indicate the court did not consider counsel's interpretation of the order as providing an alternative means of compliance until after the choice was made and certainly no indication that the court would consider that interpretation to result in criminal contempt until the court summarily imposed the contempt without any advance notice.

Since counsel's interpretation of the order was a reasonable interpretation, the Court cannot find that there was any willful disobedience of the order and therefore the district court's finding of contempt of court is vacated. Since the Court concludes that this controversy resulted from a mutual misunderstanding of the court's order, no attorney's fees are awarded. Costs to appellant.

## IV. CONCLUSION

For the foregoing reasons, we vacate the district court's finding of Ms. Elliott in contempt of court, and award costs to Ms. Elliott.

Justices BURDICK and J. JONES concur.

Chief Justice EISMANN, concurring in part and dissenting in part:

I concur in the majority opinion except for the denial of Ms. Elliott's request for an award of attorney fees under Idaho Code § 7–610. That statute provides that in contempt proceedings "the court in its discretion, may award attorney's fees to the prevailing party." Ms. Elliott is the prevailing party in this case. Regardless of the competing interpretations of the district court's order, I would award attorney fees because it summarily adjudicated Ms. Elliott in contempt under circumstances in which summary contempt proceedings were clearly inappropriate.

On Friday, July 22, 2005, the district court held an in-chambers meeting with the deputy prosecuting attorney and Ms. Elliott to discuss the prosecution's request for information about a possible defense expert witness. After argument from both counsel, the court stated:

> So, what I am going to do is I am going to order that the Defense will either provide access to their expert to allow the State to interview the expert with regard [to] his opinion and the basis of those opinions prior to trial or in the alternative the Defense shall provide to the State a summary of testimony which it anticipates it will elicit from its expert witness and the basis of the witness's opinions.

Ms. Elliott then expressed her concerns that during an interview of the expert, the State's inquiry may delve into information that is not subject to disclosure under Idaho Criminal Rule 16.[1] The court responded that as an alternative the Defense could provide the summary. Ms. Elliott asked when the summary would have to be provided, and the court responded that it must be provided to the State "no later than Monday at 10:00." The deputy prosecutor then asked if the Defense was going to provide the interview or the summary, and Ms. Elliott responded, "We will produce a summary." The Defense did not produce the summary by the deadline of July 25, 2005, at 10:00 a.m.

On Tuesday, July 26, 2005, at 9:00 a.m., the district court met in open court with the deputy prosecuting attorney and with defense counsel, Ms. Elliott and Mr. Roark. The court recited the procedural history of the case, including defense counsel's unsuccessful attempt to have this Court intervene and block the discovery order. It then took up a motion by the State to exclude the testimony of the Defense expert. When given an opportunity to respond to that motion,

---

1. Idaho Criminal Rule 16(g) provides:

    Except as to scientific or medical reports, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant, or defendant's attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant or state or defense witnesses, or prospective state or defense witnesses to the defendant, defendant's agents or attorneys.

Ms. Elliott stated that the Defense would follow the court's written order that had been entered on Monday. The court twice asked Ms. Elliott whether she had provided the information to the State, and both times she answered that she had not. The court then declared a recess and upon returning announced, "I find the defense counsel in criminal contempt of the court."

The district court treated Ms. Elliott's conduct as direct contempt and summarily adjudicated her in contempt. Because the alleged contempt was clearly indirect contempt, the court was clearly wrong in summarily adjudicating her in contempt. The court also adjudicated her in "criminal contempt" without affording her the constitutional rights to which she was entitled before a criminal contempt sanction could be imposed for indirect contempt. *See, Camp v. East Fork Ditch Co., Ltd.,* 137 Idaho 850, 860–61, 55 P.3d 304, 314–15 (2002), for a list of those rights.

Idaho Criminal Rule 42 governs summary contempt proceedings in connection with a criminal case. Subsection (b)(1) of that Rule provides:

> (1) A summary proceeding may be used only if the contempt was committed in the presence of the court. A contempt is committed in the presence of the court if:
>
> a. The conduct occurs in open court in the immediate presence of the judge;
>
> b. The judge has personal knowledge, based upon personally observing and/or hearing the conduct, of the facts establishing all elements of the contempt; and
>
> c. The conduct disturbs the court's business.

Summary contempt proceedings could not be used in this case because the allegedly contemptuous conduct did not occur "in open court in the immediate presence of the judge" and the judge did not have "personal knowledge, based upon personally observing and/or hearing the conduct, of the facts establishing all elements of the contempt." Ms. Elliott was allegedly required to give the summary to the deputy prosecuting attorney no later than Monday, July 25, 2005, at 10:00 a.m. Her failure to do so did not occur in open court. Judge Wetherell did not have personal knowledge of the facts establishing all elements of the contempt. He was not with Ms. Elliott continuously from 11:10 a.m. on July 22, 2005, (when the hearing ended during which he had orally ordered the discovery) until 9:00 a.m. on July 26, 2005, (when the hearing commenced during which he found Ms. Elliott in contempt). Without being physically present with Ms. Elliott during that entire time, he would not have personal knowledge of whether or not she had complied with his oral order.

Personal knowledge must be "based upon personally observing and/or hearing the conduct" constituting the contempt. I.C.R. 42(b)(1). The allegedly contemptuous conduct was Ms. Elliott's failure to give the deputy prosecuting attorney the required discovery by 10:00 a.m. on July 25, 2005. Information gained from others, including an admission by the alleged contemnor, does not constitute personal knowledge of the judge. As the United States Supreme Court stated in *In re Oliver,* 333 U.S. 257, 274–75, 68 S.Ct. 499, 508, 92 L.Ed. 682, 695 (1948) (emphasis added):

> There [in *Cooke v. United States,* 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925),] it was pointed out that for a court to exercise the extraordinary but narrowly limited power to punish for contempt without adequate notice and opportunity to be heard, the court-disturbing misconduct must not only occur in the court's immediate presence, but that *the judge must have personal knowledge of it acquired by his own observation of the contemptuous conduct.* This Court said that *knowledge acquired from the testimony of others, or even from the confession of the accused, would not justify conviction without a trial in which there was an opportunity for defense.*

In *Cooke,* 267 U.S. at 535, 45 S.Ct. at 394, 69 L.Ed. at 773, the Court quoted from *Ex parte Savin,* 131 U.S. 267, 277, 9 S.Ct. 699, 702, 33 L.Ed. 150, 153 (1889), as follows:

> [I]n cases of misbehavior of which the judge cannot have such personal knowledge, and is informed thereof only by the confession of the party, or by the testimony under oath of others, the proper practice is, by rule or other process, to require the offender to appear and show cause why he should not be punished.

Ms. Elliott's admission in open court that she did not provide the information to the State did not give Judge Wetherell personal knowledge of the facts constituting the contempt. *In re Oliver*, 333 U.S. 257, 274–75, 68 S.Ct. 499, 508, 92 L.Ed. 682, 695 (1948); *Cooke v. United States*, 267 U.S. 517, 535, 45 S.Ct. 390, 69 L.Ed. 767, 773 (1925); *Ex parte Savin*, 131 U.S. 267, 277, 9 S.Ct. 699, 702, 33 L.Ed. 150, 153 (1889). Since he clearly lacked the authority to summarily adjudicate Ms. Elliott in contempt, I would award attorney fees to her.

Justice HORTON, concurring:

The district judge's written order unambiguously required Ms. Elliott to do one of two things: either make her witness available for an interview by the prosecuting attorney or provide a summary of the substance of her witness's testimony. Although subsequent events show that it was not the district judge's intention to limit the potential consequence of disobedience to his order, his written order defined the consequences of noncompliance. The order unambiguously stated:

> Failure to provide such an adequate summary or to allow the interview of the witness will result in the court continuing the trial after the expert renders his opinion to allow the state at least two days time to prepare for cross-examination and financial sanctions to reimburse the state for any costs incurred in delaying the trial.

On the day that she was found to be in contempt, Ms. Elliott's statements to the district court reflected her willingness to accept those consequences. She stated: "Your Honor, I read the court's [order] to be three-fold. That there would be an interview, or a summation, or there would be a leeway of two days granted if the witness was called and that the defense would pay the costs of that."

These facts are similar to those addressed in *Lastufka v. State*, 662 P.2d 991 (Alaska App.1983). In that case, Lastufka was informed by the state's attorney that he faced a potential fine of $100 if found in contempt. He then admitted the contempt and was sentenced to serve 120 hours in jail. He

successfully appealed. Reversing the judgment, the appellate court stated: "We conclude that under these facts the court did not give Lastufka sufficient notice to impose a jail sentence under its inherent power to punish contempt." *Id.* at 992. We have similarly stated that an alleged criminal contemnor "entitled to certain procedural due process protections before the court can impose sanctions. He [or she] is entitled to . . . notice of the sanctions which might be imposed against him [or her]. . . ." *Ross v. Coleman Co., Inc.*, 114 Idaho 817, 838, 761 P.2d 1169, 1190 (1988) (citing *Bandelin v. Quinlan*, 94 Idaho 858, 499 P.2d 557 (1972)).

In my view, Ms. Elliott elected not to comply with the district court's order. Although it is evident that it was not the district court judge's intention to do so, his written order affirmatively misled Ms. Elliott and deprived her of the right to notice of the sanctions which might be imposed for disobedience to that order. For that reason, she may not be punished in any fashion other than that prescribed in the order which she is alleged to have violated. The order defined a sanction that would be imposed only if Ms. Elliott called the expert witness. As the condition precedent to the prescribed punishment did not occur, she may not be punished. Accordingly, I concur in the decision of the Court.