# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40883

|  |  |  |
|---|---|---|
| BRAD C. CARR, | ) | |
| | ) | **Boise, February 2014 Term** |
| Plaintiff-Respondent, | ) | |
| | ) | **2014 Opinion No. 103** |
| v. | ) | |
| | ) | **Filed: September 26, 2014** |
| CRYSTAL PRIDGEN nka CRYSTAL | ) | |
| EDGAR, | ) | **Stephen Kenyon, Clerk** |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Kathryn A. Sticklen, Senior Judge. Hon. Terry R. McDaniel, Magistrate Judge.

The decision of the district court is <u>reversed</u>. This case is <u>remanded</u> to the district court with instructions to remand to the magistrate court to vacate the judgment of conviction.

Rainey Law Office, Boise, for appellant. Rebecca A. Rainey argued.

Bauer & French, Boise, for respondent. Charles Bauer argued.

_____

HORTON, Justice.

This is an appeal from the district court sitting in its appellate capacity. The district court affirmed the magistrate court's judgment, which held that the appellant, Crystal Edgar, was guilty of two counts of indirect contempt. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Edgar and Carr are the parents of D.C., a minor child born in 2003. Edgar and Carr were never married. Both Edgar and Carr have served in the Idaho National Guard since D.C.'s birth, resulting in custody disputes arising from the parties' deployments.

Edgar's contempt convictions arose from Carr's allegation that Edgar committed two separate violations of the parties' Parenting Plan, which was incorporated into the magistrate court's May 12, 2006, Order for Entry of Stipulation for Decree Regarding Paternity, Child Custody and Child Support (the May 12 Order). Carr's allegations related to two discrete disputes. The first related to the school D.C. would attend for the 2010 school year. In the

1

summer of 2010, the parties could not agree on which school D.C. would attend. They mediated the issue, but were unable to reach a resolution. In August of 2010, Edgar unilaterally enrolled D.C. at Pepper Ridge Elementary School (Pepper Ridge) without receiving Carr's assent or seeking judicial resolution of the issue.

The second conflict dealt with Carr's request that D.C. visit him in Mississippi. Prior to being deployed to Iraq for one year, Carr was receiving pre-deployment training in Mississippi. Carr had a visitation window prior to deployment and asked Edgar if D.C. could make the trip to Mississippi. Edgar denied the request.

On August 4, 2011, Carr filed Plaintiff's Motion for Non-Summary Contempt Pursuant to I.R.C.P 75(c). Carr's motion asked the magistrate court to hold Edgar in contempt for failure to obey the May 12 Order. Carr submitted an affidavit in support of his motion. Carr's affidavit alleged three counts of contempt; however, Count II was dismissed and is not relevant to this appeal. As to Count I, Carr's affidavit alleged: "In violation of Paragraph 9[1] of Parenting Plan in May 12, 2006 Order: School started about three (3) weeks after I left Boise for pre-deployment training in Mississippi and at that time, [Edgar] enrolled [D.C.] in the school closest to her new home …." As to Count III, Carr's affidavit alleged: "In violation of Paragraph 15[2] of Parenting Plan in May 12, 2006 Order: Once I had completed my pre-deployment training, I had an opportunity to visit with family before I was deployed to Iraq. I made arrangements for [D.C.] to travel with my wife to be with me, however, [Edgar] unreasonably denied permission for him to travel out of state to be with me before I was deployed to the war zone." Carr's affidavit also alleged that Edgar was served with a copy and had actual notice of the contents of the May 12 Order.

On November 3, 2011, the magistrate court heard Carr's contempt motion. At the conclusion of the hearing, the magistrate court found Edgar guilty of contempt as charged in

---

[1] Paragraph nine of the parties' Parenting Plan provides:

Each of us will contact our child/ren's schools to find out about their needs, progress, and special events including parent-teacher conferences. We shall also share information about our child/ren's school progress, behavior, and events with each other. We will encourage and support our child/ren's efforts for further education such as college or technical training. Major decisions about our child/ren's education (such as which school they will attend) will be made by Both Parents.

[2] Paragraph fifteen of the parties' Parenting Plan states: "We shall not remove our child/ren from the state of Idaho without advance agreement of both of us. We shall include the date we shall return our child/ren to Idaho in our written agreement."

Counts I and III. On Count I, the magistrate court sentenced Edgar to five days jail, suspended, a $5,000 fine, suspended, and placed her on two years unsupervised probation. On Count III, the magistrate court sentenced Edgar to three days in jail, to be served immediately.

More than a month later, and after Edgar had completed serving her jail time, the magistrate court entered its Judgment of Contempt and found that Edgar "willfully violated the court order that specifically provided that decisions concerning which school [D.C.] would attend be made jointly by the parties." The magistrate court also concluded that Edgar "blatantly breached her obligation of good faith and fair dealing when she summarily denied [Carr's] last chance to see his son before being sent to a war zone where many fathers have not returned."

On November 28, 2011, Edgar filed a notice of appeal from the magistrate court's judgment. On February 22, 2013, the district court issued its Memorandum Decision and affirmed the magistrate court's decision. On April 5, 2013, Edgar timely appealed from the district court's Memorandum Decision pursuant to I.A.R. 11(f).

## II. STANDARD OF REVIEW

When this Court reviews the decision of a district court sitting in its capacity as an appellate court, the standard of review is as follows:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012) (quoting *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008)). Thus, this Court does not review the decision of the magistrate court. *Id.* "Rather, we are 'procedurally bound to affirm or reverse the decisions of the district court.'" *Id.* (quoting *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009)).

Prior to *Losser*, when this Court reviewed a district court acting in its appellate capacity the standard of review was: "when reviewing a decision of the district court acting in its appellate capacity, this Court will review the record and the magistrate court's decision independently of, but with due regard for, the district court's decision." *Losser*, 145 Idaho at 672, 183 P.3d at 760. After *Losser*, this Court does not directly review a magistrate court's decision. *Id.* Rather, it is bound to affirm or reverse the district court's decision. *See Bailey*, 153 Idaho at 529, 284 P.3d at 973; *Korn*, 148 Idaho at 415 n.1, 224 P.3d at 482 n.1.

*Pelayo v. Pelayo*, 154 Idaho 855, 858–59, 303 P.3d 214, 217–18 (2013).

3

"Idaho Appellate Rule 11(a)(4) allows a direct appeal from an order of contempt. Thus, we review an appeal from an order of contempt the same as any other appeal." *Matter of Williams*, 120 Idaho 473, 476, 817 P.2d 139, 142 (1991). When reviewing a trial court's finding of contempt, we do not weigh the evidence, but rather review the trial court's findings to determine if they are supported by substantial and competent evidence. *In re Weick,* 142 Idaho 275, 278, 127 P.3d 178, 181 (2005) (citations omitted). We review the sanction imposed upon a finding of contempt for an abuse of discretion. *Id.*

### III. ANALYSIS

In this appeal, we are considering criminal contempt, as the trial court suspended execution of its sentence as to Count I and ordered the sentence for Count III into immediate effect. "[A]n unconditional penalty is a criminal contempt sanction, and a conditional penalty is a civil contempt sanction." *State Dep't of Health & Welfare v. Slane*, 155 Idaho 274, 277, 311 P.3d 286, 289 (2013) (quoting *Camp v. E. Fork Ditch Co., Ltd.*, 137 Idaho 850, 863, 55 P.3d 304, 317 (2002)) (alteration in original). "A penalty is unconditional if the contemnor cannot avoid any sanction by complying with the court order violated. A penalty is also unconditional even if it is suspended and the contemnor is placed on probation." *Id.* "A court can impose a criminal contempt sanction in nonsummary contempt proceedings only if the contemnor has been afforded the federal constitutional rights applicable to criminal contempt proceedings." *Id.*

Nonsummary contempt proceedings may be initiated either by a written charge of contempt or by a motion and affidavit. I.R.C.P. 75(c)(1),(2). In the present case, contempt proceedings were initiated by the latter method. Thus, the affidavit was required to "allege the specific facts constituting the alleged contempt." I.R.C.P. 75(c)(3).

**A. The district court erred in affirming the magistrate court's judgment as to Count I.**

At some point in 2010, a dispute arose between the parties as to which school D.C. would attend. Carr wanted D.C. to attend Grace Jordan Elementary and Edgar wanted him to go to Pepper Ridge. The parties' attempt to mediate this conflict failed. Thus, Count I of Carr's affidavit alleged: "In violation of Paragraph 9 of Parenting Plan in May 12, 2006 Order: School started about three (3) weeks after I left Boise for pre-deployment training in Mississippi and at that time, [Edgar] enrolled [D.C.] in the school closest to her new home … in disregard of and over the protests of both myself and my lawful attorney in fact, Shaun Carr." Based on paragraph nine of the Parenting Plan, specifically that "[m]ajor decisions about [D.C.'s] education (such as

4

which school [he] will attend) will be made by Both Parents," the magistrate court concluded that Edgar willfully violated the court's order and therefore found Edgar guilty of contempt.

The simple act of enrolling D.C. into school could not be the basis for a finding of contempt. Given that Idaho law creates criminal penalties for parents who fail to enroll their children in school or make appropriate arrangements for private education, I.C. §§ 33-202; 33-207, the May 12 Order cannot reasonably be interpreted as prohibiting D.C. from attending school in the absence of parental agreement as to which school he would attend.

A person may be found guilty of a criminal contempt for a willful violation of a court order. *State v. Rice*, 145 Idaho 554, 556, 181 P.3d 480, 482 (2008); *In re Weick*, 142 Idaho at 279, 127 P.3d at 182; *Camp*, 137 Idaho at 862, 55 P.3d at 316. The old aphorism "it takes two to tango" applies here. One party does not have the power to create an agreement without the assent of the other party. As the dispute culminating in D.C.'s enrollment in Pepper Ridge reflects, Edgar did not have the power to cause agreement between the parties as to which school D.C. would attend. Therefore, she could not be found to have willfully violated the court's order solely due to the parties' inability to reach an agreement as to D.C.'s school.

In apparent recognition of the inefficacy of an order that purported to require the parties to reach an agreement, the magistrate's judgment focused on the fact that Edgar did not "fil[e] a motion before the court to resolve this conflict" and her failure to "include in [her] motion [to modify child support] . . . a request for the court to resolve the school issue." This focus on Edgar's failure to seek judicial intervention mirrored the trial court's statements during the trial. At one point, the trial court explained:

> THE COURT: This is joint legal custody. In order to have joint legal custody, you must share the decision-making process in all areas of the child's life, including his health, education, and welfare. And if you violate that, that's a violation of the decree.
> …
> What should have taken place is there should have been a motion before the court to determine which parent was more likely able to make the decision concerning education because they could not make this decision between the two of them. That's what the court processes are for.
> But if one person, on their own, unilaterally decides where the child is going to go, that's a violation of the joint legal custody.

The trial court later returned to this theme:

> THE COURT: No. No. The issue here, Counsel, as I have repeated said – both you and your substituted counsel – substituted-for counsel have a hard time

understanding this –the only issue here on that particular contempt is whether or not the parties had an agreement – okay? – to enroll this child in one school or the other. That's the only issue. And they didn't.

Your client has already testified they didn't have an agreement. Her frame of mind of why she went ahead and enrolled the child is irrelevant. Okay? Because if she didn't have an agreement, then her only alternative was to file a motion with the court to have the court order the child to be enrolled in her school, to have the court step into the process.

The difficulty with the trial court's analysis is that Carr had alleged that Edgar violated paragraph 9 of the Parenting Plan incorporated in the May 12 Order. That provision is silent as to the parties' duties in the event of a failure to reach agreement as to D.C.'s education. An alleged contemnor is entitled to certain procedural due process protections, including of "notice of the exact charges against him." *Ross v. Coleman Co., Inc.*, 114 Idaho 817, 838, 761 P.2d 1169, 1190 (1988) (citing *Bandelin v. Quinlan*, 94 Idaho 858, 499 P.2d 557 (1972)). "Before someone can be found in contempt for violating a court order, the order must command that person to do or to refrain from doing something." *Bald, Fat & Ugly, LLC v. Keane*, 154 Idaho 807, 810, 303 P.3d 166, 169 (2013) (citing *Albrethson v. Ensign*, 32 Idaho 687, 186 P. 911 (1920)). "[T]he order must be clear and unequivocal." *Rice*, 145 Idaho at 556, 181 P.3d at 482 (citing *United States v. Fleischman*, 339 U.S. 349, 370–71 (1950) (Douglas, J., dissenting)).

Here, the affidavit did not allege that Edgar had violated the May 12 Order by failing to go to court to resolve the parties' impasse as to where D.C. would receive his education. "A defendant simply may not be convicted of a crime for which the defendant is not given notice that he may be convicted. 'Conviction upon a charge not made would be a sheer denial of due process.' " *State v. Padilla*, 101 Idaho 713, 726, 620 P.2d 286, 299 (1980) (quoting *DeJonge v. Oregon*, 299 U.S. 353, 362 (1937)). We hold that the magistrate court erred by convicting Edgar of contempt on a basis different from that which was alleged in Carr's affidavit and the district court erred in affirming that conviction.[3]

## B. The district court erred in affirming the magistrate court's judgment of conviction finding Edgar guilty of contempt under Count III.

---

[3] This is not the magistrate court's only error as to Count I. The court refused to permit the introduction of evidence that on August 30, 2010, Carr agreed, through his attorney, that D.C. would attend Pepper Ridge. Such an agreement would constitute a defense to the charge of contempt that was actually advanced. "The right to present a defense is protected by the Sixth Amendment of the United States Constitution and made applicable to the states through the due process clause of the Fourteenth Amendment." *State v. Meister*, 148 Idaho 236, 239, 220 P.3d 1055, 1058 (2009) (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)). "This right is a fundamental element of due process of law." *Washington*, 388 U.S. at 19. If the trial court abridges this fundamental right, the remedy is to vacate the conviction and remand for a new trial. *Meister*, 148 Idaho at 239, 220 P.3d at 1058.

Count III of Carr's affidavit dealt with the parties' disagreement about D.C.'s travel to Mississippi. Specifically, Count III of Carr's affidavit stated: "In violation of Paragraph 15 of Parenting Plan in May 12, 2006 Order: Once I had completed my pre-deployment training, I had an opportunity to visit with family before I was deployed to Iraq. I made arrangements for [D.C.] to travel with my wife to be with me, however, [Edgar] unreasonably denied permission for him to travel out of state to be with me before I was deployed …."

The magistrate court's analysis of the Count III contempt claim is convoluted.[4] The magistrate court began its analysis by looking at paragraph four and paragraph ten from the parties' Supplemental Custody Order[5] that was issued with the Parenting Plan on May 12, 2006. Paragraph four of the Supplemental Custody Order states: "When children are in the care of a parent, that parent may take the children to such reasonable places and engage in such reasonable activities as that parent may choose." Paragraph ten of the Supplemental Custody Order states: "The parent caring for the children shall not allow the children to be absent from that parent's residence for more than 48 hours without first providing to the other parent information about how the children can be reached during the period of absence." The magistrate court then considered paragraph fifteen of the Parenting Plan, the only provision cited at to Count III in Carr's affidavit, which provides: "We shall not remove our child/ren from the state of Idaho without advance agreement of both of us. We shall include the date we shall return our child/ren to Idaho in our written agreement."

After considering the three provisions, the magistrate court concluded that the provisions "create a conflict as to whether or not [Carr] had to ask permission of [Edgar] to have [D.C.] visit him in Mississippi."[6] The magistrate court did not explain the nature of the conflict, i.e., specifically what provisions were inconsistent. In any event, because the magistrate court concluded that the provisions conflicted, it proceeded to interpret them by employing canons of

---

[4] The magistrate court's legal contortions appear to be the product of an after-the-fact attempt to legally justify a clearly erroneous conclusion that Edgar's conduct violated paragraph fifteen of the Parenting Plan. The judge's conduct in this action—both at the hearing and the *post hoc* rationalization reflected in the judgment—is sufficiently disturbing as to warrant further inquiry by the Idaho Judicial Council.

[5] Neither paragraph four nor paragraph ten of the parties' Supplemental Custody Order was cited to or referenced by Carr in his affidavit in support of his motion for contempt. Instead, the magistrate judge took it upon himself to consider these provisions after he had sentenced Edgar. *See* note 4, *supra*.

[6] In finding this conflict, the magistrate judge ignored the parties' Supplemental Custody Order which has a conflict resolution clause which provides: "If the provisions of any other current decree or order of this court conflict with the terms of this order, the terms of the other decree or order shall control." Therefore, paragraphs four and ten of the Supplemental Custody Order should not have been considered by the magistrate judge as conflicting with the Parenting Plan.

7

contract interpretation. Relying on *Toyama v. Toyama*, 129 Idaho 142, 144, 922 P.2d 1068, 1070 (1996), a case that held "the rules of construction of contracts apply equally to the interpretation of divorce decrees," the magistrate court determined that Edgar had a duty of good faith and fair dealing in carrying out the parties' Parenting Plan. Additionally, the magistrate court noted that where a contract is ambiguous the intent of the parties should govern.

As evidence of the parties' intent, the magistrate court looked to a court order stipulated to by the parties on August 13, 2004, that provided: "Prior to deployment the parties agree that each parent would like to spend as much time with their child as possible. The parties agree to cooperate to allow both parents to have as much access with the child prior to deployment as possible." The magistrate court then stated: "Being well aware of this intent as expressed by both parties in 2004, [Edgar] blatantly breached her obligation of good faith and fair dealing when she summarily denied" Carr's travel request. Ultimately, the magistrate court stated that "[e]ither way, ambiguity of the decree or breach of good faith and fair dealing, would be resolved by the gleaning of the parties' intent as to allow visitation before deployment" and found that Edgar willfully violated paragraph fifteen of the Parenting Plan.

Paragraph fifteen of the Parenting Plan provides: "we shall not remove our child/ren from the state of Idaho without advance agreement of both of us. We shall include the date we shall return our child/ren to Idaho in our written agreement." The conduct addressed in this paragraph is removing D.C. from Idaho without the advance written permission of the other parent. It has nothing to do with the duty of good faith and fair dealing in maximizing a parent's time with D.C. prior to deployment.

This matter did not involve Edgar's removal of the child from Idaho. Rather, Carr sought to remove the child from Idaho. As we previously noted, "[t]o find a person in criminal contempt for willfully disobeying a court order, the order must be clear and unequivocal." *Rice*, 145 Idaho at 556, 181 P.3d at 482. Although paragraph fifteen is sufficiently clear and unequivocal to be used as grounds for a contempt charge, it is simply inapplicable to the evidence presented at hearing. There was simply no evidence—much less substantial evidence—that Edgar violated paragraph 15. Therefore, the district court erred in affirming the magistrate court's judgment of conviction as to Count III.

**C. Attorney fees.**

Carr argues that he is entitled to attorney fees pursuant to Idaho Code sections 7-610 and 12-121. Edgar claims, without argument, that she is entitled to attorney fees on appeal pursuant to paragraph seventeen of the parenting plan and Idaho Code section 7-610.

Idaho Code section 7-610 provides for an award of attorney fees on appeal from a contempt proceeding, providing:

> Upon the answer and evidence taken, the court or judge must determine whether the person proceeded against is guilty of the contempt charged, and if it be adjudged that he is guilty of the contempt, a fine may be imposed on him not exceeding five thousand dollars ($5,000), or he may be imprisoned not exceeding five (5) days, or both …. Additionally, the court in its discretion, may award attorney's fees and costs to the prevailing party.

"Idaho Code sections 7–610 and 12–121 both permit the discretionary award of attorney fees 'to the prevailing party'" on appeal from a contempt proceeding. *State Dep't of Health & Welfare v. Slane*, 155 Idaho 274, 279, 311 P.3d 286, 291 (2013). "[I]n order to be entitled to attorney fees on appeal, authority and argument establishing a right to fees must be presented in the first brief filed by a party with this Court." *Carroll v. MBNA Am. Bank*, 148 Idaho 261, 270, 220 P.3d 1080, 1089 (2009).

Carr is not entitled to attorney fees because he did not prevail in this appeal. Edgar is not entitled to attorney fees on appeal because she failed to provide any argument to support her claim.

## IV. CONCLUSION

The decision of the district court is reversed. We remand with instructions to the district court to remand this matter to the magistrate court with instructions to vacate the judgment of conviction. No attorney fees are awarded. Costs on appeal are awarded to Edgar as the prevailing party.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES, **CONCUR**.

9