**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 48705**

| | |
|---|---|
| JUDY KATSEANES, ) | |
| ) | |
|     Plaintiff-Respondent, ) | |
| ) | |
| v. ) | |
| ) | Boise, September 2022 Term |
| JEFF KATSEANES, ) | |
| ) | Opinion Filed: January 6, 2023 |
|     Defendant-Appellant, ) | |
| ) | Melanie Gagnepain, Clerk |
| and ) | |
| ) | |
| BILLIE KATSEANES, ) | |
| ) | |
|     Defendant. ) | |
| _____) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County. Stevan H. Thompson, District Judge.

The district court's decision is <u>affirmed</u>.

Blaser, Oleson & Lloyd, Blackfoot, attorneys for Appellant. Justin B. Oleson argued.

Baker & Harris, Blackfoot, attorneys for Respondent. Jared M. Harris argued.

_____

BEVAN, Chief Justice.

This appeal arises from an order of contempt entered against Jeff Katseanes ("Jeff") and an order of disgorgement entered against his attorney, Justin Oleson. As part of a divorce agreement between Judy Katseanes, now Judy Yancey ("Judy"), and Jeff, Jeff was required to pay Judy spousal support. Following several years of insufficient payments, Judy filed a lawsuit to seek enforcement of spousal support. During the proceedings, the district court orally granted Judy's request for a Qualified Domestic Relations Order ("QDRO") assigning Judy 100% of Jeff's 401k plan. After the court orally issued its order in open court, but before the district court signed a written order reflecting the oral ruling, Jeff withdrew all of the funds from the 401k. The district court ordered Jeff to return the funds and provide an accounting. When the accounting was not timely provided, the district court held Jeff in criminal contempt and sentenced him to five days in

1

jail. The court also granted an order of disgorgement against his attorney, Oleson, after discovering Jeff's attorney fees had been paid with funds from the 401k.[1] Jeff now appeals to this Court, arguing the order of contempt and order of disgorgement were improper because the QDRO did not become effective until the written order was signed by the court. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jeff and Judy divorced on May 27, 2015. Under a Property Settlement Agreement ("Agreement") reached in the divorce, Jeff agreed to pay decreasing monthly amounts in spousal maintenance to Judy over the next ten years. More than four years later, Judy filed a complaint against Jeff, alleging he had failed to make the alimony payments required under the Agreement. Jeff responded with an answer and counterclaim. Judy then moved for summary judgment, arguing that Jeff owed more than $89,021.24 in unpaid spousal maintenance. The district court granted Judy's motion and entered a judgment of $90,633.83[2]. Jeff moved to reconsider, which the court denied. Jeff filed a notice of appeal from the district court's order granting summary judgment, however, it was conditionally dismissed by this Court because no final judgment had been entered in the case.

Soon after, Judy filed a motion for attorney fees and costs, and asked the district court to enter a QDRO ordering that money be paid from Jeff's 401k, arguing that payments had still not been received. Jeff timely objected. The case was temporarily stayed after Jeff filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Idaho, Case No. 20-40701, JMM. Jeff's bankruptcy case was later dismissed in late 2020. The parties then appeared for a hearing on Judy's motion on January 6, 2021. At the hearing, the district court orally granted Judy's motion for a QDRO and asked Judy's counsel to submit a proposed order. The court orally ruled that the QDRO assigned 100% of Jeff's 401k plan with Tadd Jenkins Chevrolet to Judy, up to the value of $90,633.83. The judge stated: "[a]nd then I don't - - I'll have to follow up with where your qualified domestic relations order is. If Madam Clerk has that to submit and put in my queue, then we can follow up in that regard and I can sign that qualified domestic relations order." Jeff's attorney, Oleson admitted, "I understand your ruling," but argued that the QDRO was not

---

[1] The district court suspended imposing the order of contempt and order of disgorgement of fees pending appeal.

[2] The amount stated in the judgment was later amended to $106,468.25 to account for a reduction due to payments Judy had received, and the addition of accrued interest, costs, and attorney fees.

appropriate and should have been brought during the divorce case. The district court acknowledged it considered Oleson's position but was ultimately not persuaded. The district court then weighed Judy's request for attorney fees and costs. The court noted that it had already ruled from the bench as to the QDRO, but took the question of attorney fees under advisement.

The day after the district court granted the QDRO on January 6, but before the court signed a written order on January 27, Jeff called Rudd & Company, the third-party retirement plan administrator for his 401k. Jeff told a Rudd & Company employee, Erin Dupree, that his attorney informed him things were resolved, there was no QDRO, and he could access his funds. Dupree and the company's CPA, Christian Zollinger, followed up with Oleson, on January 13, 2021, to verify that there was no QDRO. According to Dupree, Oleson told her, while using "some profanity," that there was not a QDRO in place, and that "[Judy's attorney] would not get his hands on the money." Relying on Oleson's statement, Dupree allowed Jeff to withdraw all of the funds in his 401k, which after fees and federal withholding, totaled $61,946.91.

After Judy discovered that the retirement funds had been distributed, she sought an order from the district court requiring Jeff to return the funds and provide an accounting. Judy also sought a temporary restraining order that would prohibit Jeff from using funds withdrawn from the 401k plan. The court granted Judy's temporary restraining order before a hearing was held, after finding immediate and irreparable injury could result if Jeff distributed the funds received from the 401k plan before a hearing could be held. The court order restrained Jeff from transferring, spending, or otherwise dissipating the funds received from the Tadd Jenkins Chevrolet 401k plan. Jeff filed another notice of appeal.

The district court heard the merits of Judy's motion on March 18, 2021. At the hearing, the court reaffirmed that it had granted the request for a QDRO on January 6, and, that although it did not sign the QDRO for a few more weeks, the order assigning 100 percent of Jeff's 401k to Judy became effective on January 6. Oleson argued that the hearing was on Judy's motion for *entry* of the QDRO, emphasizing that the court signed a written QDRO at a later date and it did not officially enter the QDRO on January 6. The district court rejected Oleson's interpretation, explaining the proposed QDRO had been submitted to the court, it was reviewed by the court as part of the motion, it was approved, and it was ordered to be entered. Seeing as the document simply needed the judge's signature, the court considered it effective as of January 6, 2021. The

3

judge also questioned Oleson's alleged representation to Rudd & Company that the court had not entered a QDRO.

Rudd & Company's employee Dupree had testified:

When we are informed that there is a potential QDRO, we have to hold funds. The only time I can release those funds is if I'm told there is no QDRO or a QDRO has executed, and I can follow those rules. When I heard from [Oleson] that there was no QDRO, I assumed [because Oleson was] an officer of the court telling me there was no QDRO, [so] we could proceed.

Despite this testimony, Oleson continued to argue that there was a difference between a signed QDRO, a pending QDRO, and a draft. He tried to show (through argument to the district court) that during his phone call with Dupree and her boss, they had only discussed whether a signed QDRO was in place when Jeff withdrew the funds:

The funds were distributed before they received the order, frankly, before it was signed, I think according to part of the testimony. I[3] didn't give them any legal advice. I don't give them legal advice. It's not gamesmanship. They call and say, 'Was there a QDRO entered?' There was not one signed by a judge. 'Is there any hold on the account?' No, there's no holds on the account. Then it appears to me that it's Mr. Katseanes' money, but I don't give you legal advice. I'm not your attorney. They can't rely upon anything I say because I'm not their attorney.

Did I tell them anything that was untrue? Absolutely not. If [Judy's counsel] was concerned, it's no different than a bank account, a house, a car or any other asset. If you want to make sure it's not gone or something happened to it to cover your judgment, you file a prejudgment writ. You get an order from the [c]ourt that the property cannot be taken or distributed. . . .

Ultimately, the district court held that the QDRO was granted on January 6, 2021, and the date when the judge's signature went on the document was not material. The district court ordered Jeff to provide an accounting of the 401k funds and redeposit the $61,946.91 to the 401k. Jeff was given fourteen days from March 18, 2021, to comply. The court also made the ex parte restraining order permanent, restraining Jeff from transferring, spending, or otherwise dissipating the funds received from the Tadd Jenkins Chevrolet 401k plan.

---

[3] Despite the nature of the argument being made by Oleson, he remained as counsel of record for Jeff up through and including filing this appeal and appearing before this Court at oral argument. Given his position, he had become a witness in the case and had his own financial interest at stake. He may have had a conflict of interest in continuing to serve as counsel. Oleson's statements to the district court implicated Idaho Rule of Professional Conduct 3.7, which provides that "a lawyer shall not act as [an] advocate at a trial in which the lawyer is likely to be a necessary witness." *See* I.R.C.P. 3.7. Oleson denied having any conflict of interest during oral argument. That said, this is a matter we leave to the Idaho State Bar to sort out.

On April 1, 2021, the date Jeff's accounting was due, Jeff filed an amended notice of appeal from (1) the district court's order that he return the funds to the 401k and provide an accounting, and (2) the restraining order. Jeff's counsel also filed a letter with the district court stating:

> This confirms that Mr. Katseanes has complied with the court's order and brought to my office an accounting of the funds from his retirement account.

> However, as we have filed an Amended Notice of Appeal today, I do not feel it proper to provide an accounting to the court at this time, until the appeal is resolved. If the court still requires an accounting, I could provide one. However, I do not believe Mr. Katseanes is required to do so at this time as this is now under appeal[4].

On April 13, 2021, Judy moved to compel Jeff to produce the accounting. The district court granted Judy's motion and ordered Jeff to provide a full accounting for the $61,946.91. The order gave Jeff five days from April 21, 2021, to comply. Jeff complied and filed an accounting on April 26, 2021. Jeff's response was not included in the record on appeal. That said, the accounting was apparently deficient given that Judy had to file a second motion to compel.

At a hearing on Judy's second motion to compel, the district court explained that a full accounting of the money with documentation showing a paper trail was required. The judge expressed his frustration with Oleson's actions throughout the multiple hearings in this case.

> I'm, quite frankly, not happy with the history of this case. As you may be able to tell, I don't get upset very often but this case is very upsetting to the [c]ourt with the history of the orders that have been entered by the [c]ourt and the conduct that's occurred since the entry of those orders.

> I see no reason to have disputed this motion today, quite frankly. I think it was simply roadblocks, attempting to drag your feet to try to provide the documentation of where these moneys went that should never have been taken out of the account in the first place, in this [c]ourt's opinion.

The court granted Judy's motion and awarded her attorney fees and costs.

Judy had also filed a motion for contempt against Jeff for failing to provide the accounting by April 1. The district court took up Judy's motion on June 3, 2021. At the beginning of the hearing, at Judy's counsel's request, the district court took judicial notice of: (1) the April 1, 2021, order for return of funds and accounting; (2) the letter Jeff's counsel filed with the court on April 1, 2021; and (3) the April 26, 2021, accounting filed with the district court. The district court held Jeff in criminal contempt after finding beyond a reasonable doubt that Jeff had willfully violated

---

[4] Once again, counsel's attempt to explain his reasons for refusing to comply with a court order by simply sending a letter to the court, rather than filing a motion or setting a hearing to make these assertions, is improper.

the court's order to supply the accounting by April 1, 2021. The district court found aggravating factors existed, including the removal of funds from the 401k account and the letter supplied to the district court explaining that Jeff had determined it unnecessary to comply with the court's order. The district court imposed a criminal sanction of five days in jail but stayed imposing jail time pending Jeff's appeal to this Court. The court awarded Judy attorney fees and costs for the prosecution of the contempt petition.

After learning that Jeff's attorney fees were paid with funds Jeff had taken from the 401k, Judy filed a motion for an order of disgorgement of fees. At a hearing on the motion, Oleson argued that the money was legally Jeff's and the circumstances were not nefarious since the QDRO was not signed and entered by the district court until January 27, 2021. As a result, Oleson argued he had no duty to disgorge those funds. Judy's attorney argued that Oleson had falsely misrepresented the district court's order to the 401k plan administrator, and that the funds would not have been distributed if she had been properly informed by Oleson.

The district court reaffirmed its earlier determination that the verbal order on January 6 was effective. The judge reiterated "[t]here was no indication of changing it in any respect. I was simply going to grant it, sign it, and then it simply became a ministerial function of getting that document into my queue for me to sign it." The court granted Judy's motion, but stayed the disgorgement of fees pending the conclusion of Jeff's appeal. Jeff filed an amended notice of appeal on May 5, 2021, which included the order of criminal contempt as well as the order of disgorgement.

## II. ANALYSIS

This appeal arises from two orders: (1) the district court's order holding Jeff in contempt and (2) the order of disgorgement for fees Jeff paid to his attorney. Both orders require us to resolve the initial question of whether the district court judge's oral ruling granting the QDRO was valid and enforceable before it was signed.

**A.** **The district court's oral ruling granting the QDRO was effective when it was ordered from the bench.**

The relevant hearing here occurred on January 6, 2021. The district court granted the QDRO at that time, which bound the parties. As the district court later explained:

> I ordered that that order was being entered on that day. It didn't matter when my signature went on that document. . . . It didn't get signed for a couple of weeks later

6

due to simply oversight and getting it in my queue, but that has no bearing on when this order went into effect.

I think Ms. Dupree's testimony and Mr. Zollinger's is quite clear that in the conversations with you [Oleson], that you represented that that was not going to occur, that no QDRO is going to be entered and that Ms. Katseanes or [her attorney] was not going to get their hands on this money. That was directly contrary to what I had just ordered on January 6th.

The district court further explained that there was no indication that the verbal order from January 6 would change in any respect; the judge was going to "grant it, sign it, and it simply became a ministerial function of getting that document into [his] queue for [him] to sign. . . ."

Jeff argues the district court's characterization of signing an order as a "ministerial function" is incorrect. In support, Jeff cites authority that a judgment is not effective until filed by the clerk. For example, In *State v. Ciccone*, this Court held:

Before a final judgment may take effect, its entry—a procedural mechanism that protects the public's interests in accessibility, administrative efficiency, and consistency—is required. "[T]he placing of the clerk's filing stamp on the judgment constitutes the entry of the judgment; and the judgment is not effective before such entry." I.R.C.P. 58(a). Thus, in order to be effective, a judgment must be file stamped by the clerk of court. *Id*. The stamp contains administrative information including the date, hour, and minute at which the document is filed, I.R.C.P. 5(d) & (e), and "the date evidenced by the filing stamp" serves as a reference point from which to calculate the 42-day period for appeal. I.A.R. 14(a).

150 Idaho 305, 306–07, 246 P.3d 958, 959–60 (2010).

Jeff posits there must be a signed, written order entered by the court for a judgment to be valid. Though Jeff's position may be correct concerning the requirement that a final *judgment* be signed and filed in order to calculate the deadline to file an appeal, that does not answer the question before us. This case is not about a final judgment; it concerns an interlocutory oral order made in open court on January 6. Although this is a clear point of law that should require no further explanation, we now affirmatively hold that oral orders are entitled to the same force and effect *between the parties* to the lawsuit as an order reduced to writing.

In *Valley View Farms. v. Westover,* the trial court entered an oral injunction restraining the defendants until the court reached its decision. Later, the court issued a written memorandum opinion in which it stated that the preliminary injunction would be granted. 96 Idaho 615, 616, 533 P. 2d 736, 737 (1974). On appeal, the plaintiff argued that no injunction was ever issued. This Court disagreed:

We believe the oral order of the trial court on the last day of the hearing and the statement in his written memorandum opinion constitutes the issuance of an injunction because it effectively restrained the Westovers.

*Id*.

Similarly, in *Camp v. East Fork Ditch Co*., this Court cited *Barnett v. Reed*, 93 Idaho 319, 460 P.2d 744 (1969), and noted that in *Barnett*, a probate judge had made an oral order which resulted in a charge of contempt. 137 Idaho 850, 862, 55 P.3d 304, 316 (2002). The *Camp* court stated, "[s]uch order was valid and thus, pursuant to I.C. § 18-1801(4), the appellant was guilty of contempt for willful disobedience of an order lawfully issued by the court." *Id*. at n. 6, (quoting *Barnett*, 93 Idaho at 323, 460 P.2d at 748). It stands to reason that if an individual can be held in contempt based on an oral order, that order is effective when pronounced by the court.

The legitimacy of oral rulings, even if not later memorialized in writing, has been confirmed by the Third, Ninth, and Eleventh circuits. In *Noli v. Commissioner of Internal Revenue*, the Ninth Circuit put to rest an argument that mirrors Jeff's argument here. The court stated:

Petitioners' arguments concerning the legal propriety of the Tax Court trial proceedings are devoid of merit. First, they argue that the bankruptcy court's oral order granting relief from the automatic stay was neither properly rendered nor docketed by the bankruptcy court. Thus, they contend no valid judgment existed which would allow the Tax Court to continue the trial proceedings.

This argument misperceives both the purpose of Fed. R. Civ. P. 58, and the binding effect of an order notwithstanding the issuing court's failure to enter it on the docket. The "separate document" requirement of Rule 58 was intended primarily to clear up uncertainties in determining, for purposes of appellate review, when there is a final appealable judgment. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384, 98 S. Ct. 1117, 1120, 55 L.Ed.2d 357 (1978) (The "sole purpose" of the separate document requirement is "to clarify when the time for appeal . . . begins to run"). Similarly, the bankruptcy court's order lifting the stay was effective and binding upon the parties. The petitioners make no claim, nor could they, that they were prejudiced by the bankruptcy court's failure to enter a separate judgment. *See, e.g., Harris v. McCarthy*, 790 F.2d 753, 757 (9th Cir.1986). They were present when the oral order was issued and clearly had notice of its existence and content.

860 F.2d 1521, 1525 (9th Cir. 1988); *see also United States v. Scarfo*, 263 F.3d 80, 88 (3rd Cir. 2001) ("The oral order possessed judicial force and effect; it had teeth and had Manno violated it, he might have been subject to punishment even if the order had not yet been reduced to writing."); *In re Int'l Admin Servs, Inc*., 408 F.3d 689, 700 (11th Cir. 2005) ("Thus, a Court's order is complete when made, not when it is reduced to paper and entered on the docket").

We agree with the rationale of these federal courts. Ultimately, the purpose of the filing stamp on any *judgment* is to determine, for purposes of appellate review, *when* there is a final appealable judgment. Thus, it is to evidence the start of the forty-two-day clock for filing a notice of appeal. I.A.R. 14(a). On the other hand, a court's *oral order* is complete when it is pronounced. *See Barnett*, 93 Idaho at 323, 460 P.2d at 748 ("[the judge's prior oral order to produce notes] was valid and thus, pursuant to I.C. § 18-1801(4), the appellant was guilty of contempt for willful disobedience of an order lawfully issued by the court."); *Noli*, 860 F.2d at 1525 (holding that a bankruptcy court's oral order was binding on the parties despite the court's failure to enter the order on the docket).

We hold the district court's oral ruling granting Judy's request for a QDRO on January 6 was effective immediately as between the parties even though it was not reduced to a writing until January 27. As recognized by the district court:

> . . . the facts and circumstances here is [sic] that the qualified domestic relations order that we are talking about that I ultimately signed, as you've indicated, on January 27th was attached to [Judy's attorney's] initial motion that he filed clear back in the fall of 2020. It was attached, so – and with those same – all those [sic] same language. Nothing was changed.

> So when you came to court on January 6th to argue that motion, everybody knew we were talking about that specific qualified domestic relations order. The specific terms of it were incorporated; were in the record, attached to [Judy's attorney's] motion. I verbally granted that and basically, on the record, said I was going to enter that specific qualified domestic relations order.

In sum, a judge's ruling from the bench is effective when it is entered on the record. Having concluded the QDRO was effective based on the district court's oral ruling on January 6, we must next determine whether the district court erred in holding Jeff in criminal contempt or ordering disgorgement of fees paid to his attorney from the 401k.

**B.      The district court's order holding Jeff in criminal contempt is affirmed.**

Jeff also argues that the district court abused its discretion when it imposed a criminal sanction against him for contempt of court. We believe that Jeff errs in asserting that an abuse of discretion standard of review applies to this question. We are being asked to determine whether a legal finding of criminal contempt is supported by substantial and competent evidence, as we discuss below. First, Jeff argues that in imposing the criminal contempt sanction, the district court failed to act consistently with the legal standards applicable to the choices available. While citing

9

the third prong of the *Lunneborg*[5] standard, Jeff ultimately gets to the heart of the issue, arguing Judy did not produce sufficient evidence to prove the elements of contempt beyond a reasonable doubt. Jeff also asserts, again under the improper standard of review, that the district court's sanction was not reached by an exercise of reason because the district court erroneously considered Jeff's previous "violation" of the QDRO as an aggravating factor when the QDRO was not effective as of January 6. As we held above, the district court's oral ruling granting the QDRO *was* effective on January 6. Thus, this argument is flawed. Still, we address Jeff's first claim of error based on the evidence submitted at trial.

The district court held Jeff in contempt for violating its order requiring that he provide an accounting by April 1, 2021. Rather than providing an accounting on April 1, Jeff's counsel filed a letter with the court stating:

> This confirms that Mr. Katseanes has complied with the court's order and brought to my office an accounting of the funds from his retirement account.
>
> However, as we have filed an Amended Notice of Appeal today, I do not feel it proper to provide an accounting to the court at this time, until the appeal is resolved. If the court still requires an accounting, I could provide one. However, I do not believe Mr. Katseanes is required to do so at this time as this is now under appeal.

Jeff subsequently provided an accounting on April 26, 2021, following Judy's motion to compel. Although Jeff eventually provided an accounting after Judy had to file a second motion to compel, Judy filed a motion for contempt based on Jeff's failure to comply with the court's original April 1 deadline.

At a court trial on Judy's motion for contempt, the district court took judicial notice of: (1) its order for return of funds and accounting dated April 1, 2021; (2) the letter Jeff's counsel filed with the court on April 1, 2021; and (3) the accounting filed with the court on April 26, 2021. The court then found beyond a reasonable doubt:

1. [Jeff] [h]ad notice and knowledge of the contents of the district court's Order for Return of Funds and Accounting dated April 1, 2021, and it's [sic] requirements that a complete accounting and documentation be provided for monies removed from the 401k account held at Rudd & Co.

2. [Jeff] had the ability to comply with the Order at the time it was entered;

3. [Jeff] willfully failed and refused to comply with the Order;

---

[5] *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

4. [The district court] ha[d] jurisdiction over the matter pursuant to I.C. [§] 1-1603 to enforce its Order pending appeal.

The district court further found aggravating factors existed, including the removal of funds from the 401k account and the letter Oleson sent to the district court explaining that as Jeff's attorney, he had determined it improper to comply with the court's order.

While this Court reviews a sanction imposed under a contempt order under an abuse of discretion standard, *In re Weick*, 142 Idaho 275, 278, 127 P.3d 178, 181 (2005) (citing *Smith v. Smith*, 136 Idaho 120, 124, 29 P.3d 956, 960 (Ct. App. 2001)), we review the trial court's conclusion of guilt beyond a reasonable doubt based on the substantial evidence standard.

> This Court does not weight [sic] the evidence, but rather reviews the district court's findings to determine if they are supported by substantial and competent evidence. Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. When the trial court exercises its discretion, this Court will not interfere unless the lower court clearly abused its discretion.

*Id*. (cleaned up).

"Although the trial court has discretion over whether to impose a sanction, it only has discretion to impose a sanction insofar as the application of its discretion yields its conclusion of guilt beyond a reasonable doubt." *State v. Rice*, 145 Idaho 554, 556, 181 P.3d 480, 482 (2008) (citing *Steiner v. Gilbert*, 144 Idaho 240, 246, 159 P.3d 877, 883 (2007) ("To impose a sanction in a case involving criminal contempt, the trial court must find all of the elements of contempt beyond a reasonable doubt.").

We recognize that "contempt is an extraordinary proceeding and should be approached with caution." *In re Weick*, 142 Idaho 275, 281, 127 P.3d 178, 184 (2005). Along these lines, "[t]his Court has long recognized implicitly that one's violation of a court order must be willful to justify an order of contempt." *Id*. at 280–81, 127 P.3d 178, 183–84 (citing *Phillips v. Dist. Court of the Fifth Jud. Dist*., 95 Idaho 404, 406, 509 P.2d 1325, 1327 (1973) ("when [a support order is] made specific by the judgment or order of a court of competent jurisdiction, [one] may be imprisoned in contempt proceedings for a willful failure to perform.")). The Court of Appeals has also explicitly held that a district court has the power to hold in contempt any person who willfully disobeys a specific and definite order of the court. *Conley v. Whittlesey*, 126 Idaho 630, 636, 888 P.2d 804, 810 (Ct. App. 1995) (citing *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984)); *see*

11

*also Sivak v. State*, 119 Idaho 211, 214, 804 P.2d 940, 943 (Ct. App. 1991); *State v. Tanner*, 116 Idaho 561, 564, 777 P.2d 1234, 1237 (Ct. App. 1989).

Here, the district court ordered Jeff to submit an accounting *to the court* by April 1. Although Oleson filed a letter advising the court that Jeff had brought an accounting of funds to his office, neither Jeff nor Oleson provided that accounting to the court by April 1 as ordered. Idaho courts have the constitutional, statutory and inherent authority to compel obedience with their lawful orders. *In re Weick*, 142 Idaho at 278, 127 P.3d at 181 (citing *Marks v. Vehlow*, 105 Idaho 560, 566, 671 P.2d 473, 479 (1983)). Because the district court ordered Jeff to submit an accounting to the court by April 1, and Jeff did not submit an accounting *to the court* by April 1, Judy proved Jeff violated the court's order beyond a reasonable doubt. Thus, the district court acted within its discretion when it imposed a sanction and held Jeff in criminal contempt. *Rice*, 145 Idaho at 556, 181 P.3d at 482.

That said, we are mindful of the fact Jeff was likely following the advice of Oleson in failing to comply with the district court's order, and that Oleson was the one who advised the court that he did not feel it was proper to provide an accounting by the ordered date. Still, "'[t]he relationship between an attorney and client is one of agency' in which the client is the principal and the attorney is the agent." *Primera Beef, LLC v. Ward*, 166 Idaho 180, 185, 457 P.3d 161, 166 (2020). "An agent may bind a principal if the agent has actual authority. Actual authority is that authority a principal expressly grants to an agent or impliedly confers on an agent because it is usual, necessary, and proper to achieve the object of the express authority granted to the agent." *Id*. at 185–86, 457 P.3d at 166–67. "Even in the absence of actual authority, an agent generally may bind a principal if the agent is cloaked with apparent authority." *Id*. "Only acts by the agent that are within the scope of the agency relationship affect the principal's legal liability." *Id*. (quoting *Humphries v. Becker*, 159 Idaho 728, 735, 366 P.3d 1088, 1095 (2016)).

Oleson was representing Jeff when he filed the April 1 letter informing the court Jeff would not be complying with the court's order. Jeff has not asserted on appeal that Oleson failed to consult with Jeff prior to Oleson sending a letter to the district court advising that he would not be producing the accounting. Idaho Rules of Professional Conduct 1.4(a)(1), (a)(2) required Oleson to promptly inform Jeff of any decision or circumstance with respect to which Jeff's informed consent was required, and also to reasonably consult with Jeff about the means by which Jeff's objectives were to be accomplished. Idaho Rule of Professional Conduct 1.0(e) defines "informed

12

consent" as denoting an "agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Thus, no matter if the failure to comply was done at Oleson's behest, or was a decision Jeff made on his own, as the litigant, Jeff ultimately bore the burden of complying with the court's order. Jeff failed to do so. The district court's order of contempt is supported by substantial and competent evidence in the record. Thus, it is affirmed.

**C.      The district court's order of disgorgement is affirmed.**

Last, Jeff argues that the district court erred in entering an order of disgorgement because it was based on Jeff's failure to obey the QDRO. In support, Jeff reiterates his position that the QDRO was not valid on the date of the oral ruling, and only took effect once the court signed and entered the order on January 27th. As we held, the QDRO was effective once the district court ruled from the bench on January 6. Judy's motion for disgorgement was filed after she learned Jeff's attorney fees were paid with funds Jeff had wrongfully taken from the 401k. The district court granted Judy's motion and ordered Jeff to repay the funds to the 401k based on his violation of the QDRO. "Every court has the authority to enforce its orders as issued." *Vierstra v. Vierstra*, 153 Idaho 873, 880, 292 P.3d 264, 271 (2012); I.C. § 1-1603. We affirm the district court's order of disgorgement requiring Oleson to repay any funds wrongfully taken from the 401k, including those paid to his attorney.

**D.      We award Judy attorney fees and costs as the prevailing party on appeal.**

Judy argues that she is entitled to attorney fees and costs under Idaho Code section 12-121 and the Property Settlement Agreement. The Agreement between the parties provides: "If the agreement is breached by either party, the breaching party shall pay all reasonable costs, expenses, and attorney's fees incident to the breach, which are actually incurred by the other party and reasonably necessary to enforce this Agreement by litigation." The issues raised on appeal arose from Jeff's failure to make payments required under the Agreement. Judy is thus entitled to attorney fees on appeal. Judy is also awarded costs as the prevailing party on appeal. I.A.R. 40.

### III. Conclusion

The district court's decision is affirmed. Judy is awarded attorney fees and costs as the prevailing party.

Justices BRODY, STEGNER, MOELLER, and ZAHN CONCUR.

13