**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50027**

| | | |
|---|---|---|
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, as Personal Representative of the Estate of Delores Adamson, Deceased, | ) ) ) ) | Filed: August 29, 2023 |
| | ) | Melanie Gagnepain, Clerk |
| Plaintiff-Respondent, | ) ) | THIS IS AN UNPUBLISHED |
| v. | ) ) | OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| PRAVEEN KHURANA, | ) ) ) | |
| Defendant-Appellant. | ) ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Gregory FitzMaurice, District Judge. Hon. Michelle M. Evans, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming judgment of contempt for violating a restraining order, <u>affirmed</u>.

Magyar, Rauch, Assoc., PLLC.; Lawrence Moran, Lewiston, for appellant.

Hon. Raúl R. Labrador, Attorney General; Douglas E. Fleenor, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Chief Judge

Praveen Khurana appeals from a decision of the district court, on intermediate appeal from the magistrate court, affirming his judgment of contempt for violating a restraining order. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

While securing a residence in Lewiston, which was subject to a Medicaid lien and recently recovered from Khurana in a successful ejectment action, Idaho Department of Health and Welfare representatives discovered extensive damage to the residence. The Department responded by

1

initiating contempt proceedings against Khurana, alleging he violated a restraining order that prohibited him from removing fixtures from the residence or otherwise substantially damaging it.[1]

After approximately three years of delay resulting from the voluntary withdrawal and refiling of the motion for contempt, Khurana's motions, the COVID-19 pandemic and a stay to allow resolution of a parallel criminal case, the magistrate court held a trial on the Department's contempt motion. Following the contempt trial, the magistrate court found Khurana guilty of twenty counts of contempt for damaging the residence in violation of the restraining order and entered a judgment imposing criminal sanctions of five days in jail on each count. These jail terms were ordered to run consecutively, resulting in an aggregate term of one hundred days in jail. Subsequently, Khurana filed a pro se petition for post-conviction relief alleging that his counsel was ineffective and a motion for reconsideration, neither of which garnered him relief. After Khurana appealed to the district court, execution of the judgment was stayed pending resolution of the intermediate appeal.

On intermediate appeal, Khurana challenged the sufficiency of the evidence supporting the findings that he acted in contempt of the restraining order, the magistrate court's decision not "to evaluate [his] petition under [I.C.R.] 54," and the effectiveness of his appointed counsel in the contempt proceeding. The district court affirmed the judgment, concluding that substantial and competent evidence supported the magistrate court's findings and that Khurana had not shown his attorney's performance was prejudicial. Khurana again appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, we review the magistrate court record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). However, as a matter of appellate procedure, our disposition of

---

[1] The Department actually filed two motions for contempt. The first was filed in December 2018 and then voluntarily withdrawn three months later. The Department later refiled the same motion for contempt in August 2019. It is unclear why the Department withdrew the first motion for contempt.

the appeal will affirm or reverse the decision of the district court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

## III.

## ANALYSIS

Khurana challenges the sufficiency of the evidence supporting his contempt convictions, arguing that there is insufficient evidence to support a finding beyond a reasonable doubt that he violated the restraining order. Khurana further argues that his appointed counsel in the contempt proceeding was ineffective and that the "the lower court erred by declining to evaluate [his] petition under [I.C.R.] 54." The Department responds that substantial, competent evidence supports the magistrate court's findings that Khurana acted in contempt of the restraining order, that he failed to demonstrate prejudice from any alleged deficiencies in his counsel's representation, and that his arguments related to I.C.R. 54 are moot. We hold that Khurana has failed to show there is insufficient evidence to support his contempt convictions or that his counsel was ineffective. Furthermore, Khurana has waived any error related to the application of I.C.R. 54.

### A.     Contempt

A court has the power to hold in contempt any person who willfully disobeys a specific and definite order of the court. *In re Weick*, 142 Idaho 275, 281, 127 P.3d 178, 184 (2005). Idaho Rule of Civil Procedure 75 governs contempt proceedings. The rule distinguishes civil sanctions from criminal sanctions in contempt proceedings. I.R.C.P. 75(a). A civil sanction is conditional, which means the contemnor can avoid the sanction by doing the act he or she was previously ordered to do. I.R.C.P. 75(a)(6). A criminal sanction is unconditional, meaning the contemnor cannot avoid the sanction entirely or have the sanction cease by complying with a prior court order. I.R.C.P. 75(a)(7). A criminal sanction can be imposed for any contempt. I.R.C.P. 75(a)(7). When a party disobeys a court order requiring a certain act, and no longer has the present ability to comply with that order, only criminal contempt sanctions are available. *Weick*, 142 Idaho at 279, 127 P.3d at 182. To find a person in criminal contempt, the trial court must find that all of the elements of contempt have been proved beyond a reasonable doubt, including that the person willfully committed the contempt. *State v. Rice*, 145 Idaho 554, 556, 181 P.3d 480, 482 (2008).

The twenty counts of contempt for which Khurana was found guilty all entail violations of a restraining order pronounced during a December 6, 2018, hearing on the Department's complaint for ejectment against Khurana. The restraining order, which was subsequently memorialized in written orders, prohibits Khurana from "substantially damag[ing] the real property" subject to the ejectment action, "removing fixtures from the real property," or "removing personal property if such removal would cause substantial damage to the real property." In the same hearing, Khurana responded to the pronouncement of the restraining order by inquiring what items he could remove from the residence.[2] Following the contempt trial, the magistrate court found that, as of December 6, 2018, Khurana had not vacated the residence and that he was guilty of contempt for violating the restraining order by removing or destroying various fixtures and damaging the interior of the residence. Khurana concedes that his "actions could allow for an inference that he actually removed items from the property," but there is "neither sufficient, nor substantial evidence--or any evidence at all--that [his] conduct was contemptuous" of the December 6, 2018, order.

A trial court's determination that an individual is guilty of contempt beyond a reasonable doubt is reviewed on a substantial evidence standard. *Katseanes v. Katseanes*, 171 Idaho 478, 486, 522 P.3d 1236, 1244 (2023). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). Evidence is substantial if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997). On appeal from a finding of criminal contempt, we will consider the evidence in the light most favorable to the trial court's decision. *See Schwan's Sales Enters., Inc. v. Idaho Transp. Dep't*, 142 Idaho 826, 830, 136 P.3d 297, 301 (2006) (considering the evidence in the light most favorable to the jury's verdict when reviewing the denial of a motion for judgment notwithstanding the verdict); *State v. Herrera-Brito*,

---

[2]    The transcript of this hearing is absent from the record on appeal. Portions of a transcript missing on appeal are presumed to support the actions of the district court. *State v. Repici*, 122 Idaho 538, 541, 835 P.2d 1349, 1352 (Ct. App. 1992). Accordingly, we will not disturb the magistrate court's finding that Khurana made these inquiries in the contempt proceeding.

131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998) (considering the evidence in the light most favorable to the prosecution when reviewing a finding of guilt in a criminal case); *see also Moore v. Moore*, 576 S.W.3d 15, 17 (Ark. 2019) (considering the evidence in the light most favorable to the trial court's order when reviewing a finding of criminal contempt); *In re Williams*, 818 S.E.2d 260, 262 (Ga. Ct. App. 2018) (reviewing the evidence in the light most favorable to a finding of contempt).

Khurana focuses his sufficiency challenge on the absence of an individual witness or other direct evidence placing him at the residence or the occurrence of the damage to it at a specific time following issuance of the restraining order. However, a constellation of evidence in the record supports the magistrate court's finding, beyond a reasonable doubt, that both occurred after issuance of the restraining order.

During the contempt trial, the magistrate court admitted copies of documents Khurana ostensibly authored and filed in a bankruptcy proceeding that coincided with the ejectment action.[3] In one of the documents, captioned "Emergency Motion for State - Pending Appeal" and dated August 4, 2018, Khurana indicated he "fully intended[ed] to take his property if he [was] compelled" to move out of the residence and that doing so would "cause breakage and damage" to the residence "when removing Windows, Doors, Door casings, [the] Central AC unit, Hardwood floors, [and] Bathroom fixtures." The document further indicated that Khurana had "property that is wall mounted . . . which when removed would damage the wall such as [leaving] holes or damage the drywall" and appliances "would have to be taken out by busting open the floor tile in front of it. (Like [a] dishwasher and kitchen stove)." In another document signed by Khurana and dated November 29, 2018, he represented that he was still living in the residence.[4] The magistrate court also noted that, during the December 6, 2018, hearing on the Department's complaint for

---

[3] Despite apparently bearing the caption of an appeal from a bankruptcy proceeding by Khurana along with his signature, the documents do not include a file stamp indicating they were filed with a court. However, on appeal, Khurana neither challenges the admission of the documents nor disputes the veracity of the information contained therein.

[4] According to the district court's decision on intermediate appeal, receipt of this document is what prompted the Department to seek a restraining order against Khurana.

5

ejectment, Khurana inquired about what he could take from the real property. According to the magistrate court, this inquiry indicated that he was still in possession of the residence and had personal property there at that time, which he had an interest in or intent to remove.

The Department also presented testimony from three witnesses who established the condition of the property after issuance of the restraining order. A property manager called by the Department testified to visiting the residence "around the middle" of December 2018. The property manager testified that he visited the property to determine whether to offer to purchase it. After accessing the locked residence with a key stored in a "realtor lockbox," the property manager described finding the residence "torn apart" and "in extreme disarray." The property manager indicated that "anything of value was basically taken from the house." Photos taken by the property manager that were admitted as exhibits during the contempt trial show that the thermostat had been "torn off the wall"; the vent covers, ceiling fans, and window trim throughout the residence were taken; the interior doors were removed; the toilet had been disconnected from the plumbing; the tiles on the shower pan had been broken with a hammer; and some plumbing had been ripped out of the walls. Other photos showed that electrical switches and outlet covers had been taken, leaving exposed wires "hanging out of the walls." The kitchen drawers were gone, the cabinets "busted up," and the kitchen sink and hood vent had been taken. Although the oven was left behind, the property manager testified it was broken and "would have to be thrown away." Additionally, the property manager indicated "there was just a lot of holes and things like that that needed to be filled . . . [and] painted" throughout the residence.[5] According to the property manager, the type of damage he observed to the residence was "not just something that happens with someone living there," but rather indicated to him that "someone did [it] with intent."

A neighbor who lived "directly across the street" from the residence testified to seeing Khurana and two other individuals taking things from the residence over the course of "two or three days" in December 2018 or January 2019. In particular, the neighbor recalled seeing Khurana remove what appeared to be a glass "shower enclosure" from the residence and place it inside an enclosed trailer. Curious whether Khurana had moved out, the neighbor later crossed

---

[5]     Another witness who visited the home in January 2019 testified to finding the residence in a similar condition.

the street and looked in the windows of the residence. The neighbor testified that the residence "was a mess-and-a-half," but it was "obvious that somebody had moved out."

Contrary to Khurana's assertions, the above-described evidence viewed in the light most favorable to the magistrate court's decision is sufficient to support a finding beyond a reasonable doubt that Khurana damaged the residence after issuance of the restraining order. A week before issuance of the restraining order, Khurana was apparently attempting to prevent his removal from the residence via a bankruptcy proceeding. In documents Khurana ostensibly filed in that proceeding, Khurana represented that he was living in the residence and threatened to damage it if forced to leave. Moreover, Khurana responded to the oral pronouncement of the restraining order by inquiring what he could take from the residence, which indicated to the magistrate court that "he had not yet moved his things from the residence." However, when the property manager visited about a week later, the residence was uninhabitable--without a functional toilet, shower, sink, oven, or thermostat. Plumbing had been ripped from the walls, interior doors and light fixtures removed, and the kitchen drawers taken. One of Khurana's neighbors observed Khurana removing items from the residence over the course of two to three days, including what the neighbor thought was a "shower enclosure." Although the neighbor indicated this could have occurred in December 2018 or January 2019, it must have occurred sometime before December 14, 2018, as the property manager indicated the residence had been secured and fitted with a realtor lockbox by then.

Considering Khurana's efforts to retain possession of the residence and his statements during the December 6, 2018, hearing, a reasonable factfinder could determine that Khurana was still living at the residence when the restraining order was issued. For the same reasons, a reasonable factfinder could find that Khurana would neither have caused nor allowed the extensive damage to the residence described by others until his ejection was certain, which did not occur until after issuance of the restraining order.[6] The neighbor's testimony regarding Khurana removing a shower enclosure and other items from the residence over a period of days in December 2018, along with the property manager's observations upon visiting the residence and Khurana's

---

[6] The judgment restoring possession of the residence to the Department was entered on December 12, 2018.

threats to damage the residence contained in his bankruptcy filings, are sufficient to support a finding that he damaged the residence.

Khurana faults the magistrate court for failing to "give weight to [his] December 31, 2018, affidavit that he had vacated the property prior to the December 6, 2018, [restraining] order, and never subsequently returned." We disagree. Not every document in a trial court's file constitutes evidence a trial court may freely rely upon to establish disputed facts. *State v. Gale*, 171 Idaho 550, 553, 524 P.3d 52, 55 (Ct. App. 2022). Khurana did not seek admission of this affidavit into evidence during the contempt proceedings. When addressing a substantial evidence challenge, we cannot consider testimony or other materials not presented as evidence in the relevant trial court proceeding. *See id.* Accordingly, Khurana has failed to show the magistrate court erred by failing to consider his December 31, 2018, affidavit. The evidence described above, viewed in the light most favorable to the magistrate court's finding of contempt, is sufficient to support the magistrate court's determination that Khurana damaged the residence in violation of the December 6, 2018, restraining order.

**B.      Ineffective Assistance of Counsel**

Khurana asserts that his appointed counsel in the contempt proceedings was ineffective. Specifically, Khurana contends that his counsel was ineffective by failing to contact and consult with Khurana for more than 4 minutes and 49 seconds before the contempt hearing.[7] According to Khurana, this "brief period" did not "constitute a meaningful time and manner for counsel to provide effective advice" or prepare Khurana for the hearing.

Before addressing Khurana's substantive arguments, we must first address deficiencies in his briefing. Idaho Appellate Rule 35(a)(6) requires parties to include citations to "parts of the transcript and record relied upon" in the argument section of their briefs. Such citations are

---

[7]     Khurana also raises two additional issues for the first time on appeal to this Court: (1) that the contempt proceedings violated due process; and (2) that the magistrate court erred by dismissing his petition for post-conviction relief. Neither of these issues were briefed and presented to the district court during Khurana's intermediate appeal. Where a party appeals the decision of an intermediate appellate court, the appellant may not raise issues that are different from those presented to the intermediate court. *State v. Sheahan*, 139 Idaho 267, 275, 77 P.3d 956, 964 (2003). Because these issues were not raised in the intermediate appeal, they cannot be considered by this Court in this second appeal.

required to make *any* argument. *Groveland Water & Sewer, Dist. v. City of Blackfoot*, 169 Idaho 936, 941-42, 505 P.3d 722, 727-28 (2022). The argument section of Khurana's brief addressing his ineffective assistance claim does not include citations to the record. Instead, Khurana alleges certain things happened during the contempt trial without citing supporting evidence of such in the record. This Court will not search the record for error. *Owen v. Smith*, 168 Idaho 633, 646, 485 P.3d 129, 142 (2021). Because Khurana has failed to support his ineffective assistance arguments with citations to the record, we need not consider them. Even if Khurana's briefing were not fatally deficient and we assumed all his unsupported factual allegations are accurate, however, his ineffective assistance arguments would still fail.

The approximate five-minute consultation Khurana references occurred on the day of the contempt trial just prior to the presentation of evidence during that proceeding. After calling the contempt trial to order, the magistrate court learned that Khurana was not in attendance.[8] After indicating that he did not know Khurana's address or phone number, Khurana's appointed counsel requested a continuance to "see if [he] could track [Khurana] down." The magistrate court indicated that, despite Khurana's refusal to provide a physical address other than "a burned out building on Main Street," it was "able to reach him by phone in the past." Using a phone number contained within court records, the magistrate court contacted Khurana, and he joined the remote Zoom proceeding. Khurana and his appointed counsel were then provided five minutes to confer in a private "breakout room." After this consultation, the contempt trial proceeded without Khurana or his counsel renewing the prior request for a continuance. Despite raising no objection to the limited consultation when it occurred, Khurana argues on appeal that it rendered his appointed counsel constitutionally ineffective.

The Sixth Amendment and the due process clause of the Fourteenth Amendment afford a defendant accused of criminal contempt the right to assistance of counsel. *Holt v. Virginia*, 381 U.S. 131, 136 (1965); *Cooke v. United States*, 267 U.S. 517, 537 (1925). Thus, with the exception of contempt committed in the presence of the court, which must be punished immediately to maintain the court's authority, alleged contemnors have a right to counsel if a criminal sanction is to be imposed. *See Mann v. Hendrian*, 871 F.2d 51, 52 (7th Cir. 1989). The right to counsel

---

[8] The contempt trial was conducted remotely via Zoom due to the COVID-19 pandemic.

contemplates the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 685 (1984).

To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient, and that the petitioner was prejudiced by the deficiency. *Id.* at 687-88; *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

A defendant may raise the issue of ineffective assistance of trial counsel either on direct appeal or reserve it for post-conviction proceedings. *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). Defendants cannot do both. *Id.* Accordingly, defendants must bear the burden of their decision after electing which procedural vehicle to employ. *Id.* If a defendant desires consideration of evidence outside the record on direct appeal, however, post-conviction proceedings are necessary. *Id.*

Khurana attempted to employ both methods of presenting his ineffective assistance claim. Following entry of judgment in the contempt proceeding, Khurana filed a pro se petition for post-conviction relief. Khurana's petition is a form document bearing the same caption and case number for the ejectment and contempt proceedings. Among the handwritten allegations set forth on blanks in the form petition is one indicating that Khurana "did not even have *one* meeting with [his] counsel to prepare for the case." About nine days later and with new counsel, Khurana filed a motion for reconsideration of the "holding that [he] was in contempt" of the restraining order, arguing (among other things) that his appointed counsel in the contempt proceeding was ineffective. However, Khurana did not support either his pro se petition or motion for

reconsideration with additional evidence relevant to his alleged ineffective assistance claim. Following a hearing, the magistrate court denied Khurana's motion for reconsideration.

On intermediate appeal to the district court, Khurana again asserted that his appointed counsel in the contempt proceeding was ineffective. According to Khurana, the "brief period" appointed counsel consulted with him prior to the hearing cannot constitute effective assistance of counsel. The district court rejected the argument, concluding that Khurana "made no showing of how he was prejudiced by the lack of contact with his attorney."

Khurana asserts, as he did before the district court, that "it is unreasonable to believe that [his] appointed counsel felt . . . that 4 minutes and 49 seconds of consultation and preparation with his client was sufficient to . . . provide constitutionally adequate assistance." However, beyond citing *Strickland* for the proposition that "the right to counsel is the right to the effective assistance of counsel," Khurana provides no citation to relevant authority supporting his ostensible argument that failing to meet with a client for a certain amount of time can constitute per se deficient performance. Indeed, authorities addressing the issue state the contrary. *See United States v. Plitman*, 194 F.3d 59, 63 (2d Cir. 1999) (observing that counsel may decide strategic and tactical matters such as selective introduction of evidence without consultation with client); *see also Lewis v. Alexander*, 11 F.3d 1349 (6th Cir. 1993) (observing that, although attorneys have a duty to consult with clients, that duty is not part of "a checklist for judicial evaluation of attorney performance"). That is not to say that counsel entirely lacks a duty to consult with a client. *See Strickland*, 466 U.S. at 688 (observing that trial counsel has a duty to "consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution"). The United States Supreme Court has recognized that *Strickland* imposes a "duty to discuss potential strategies" with clients. *Florida v. Nixon*, 543 U.S. 175, 178 (2004). However, where a decision rests with counsel, the lack of consultation with the client on that decision does not constitute per se deficient performance. *See Plitman*, 194 F.3d at 63. Thus, a lawyer might consult only briefly with a client, yet spend significant additional time reviewing records and interviewing other potential witnesses. Such performance, absent other evidence of deficiency, may be adequate under *Strickland*.

Although appointed counsel's consultation with Khurana immediately prior to the contempt trial may have been brief, the record does not disclose the contents of that meeting. Nor

11

is there evidence in the record indicating what other steps appointed counsel took to prepare for the contempt hearing. Even assuming without deciding that appointed counsel's consultation with Khurana constitutes deficient performance, the district court did not err by concluding Khurana failed to show it was prejudicial.

As the district court recognized, "Khurana must show a reasonable probability that he would not have been found in contempt if he had consulted more with his counsel" to establish prejudice under *Strickland*. According to Khurana, the prejudice arising from his appointed counsel's "failure to continue the trial and proceed unprepared is all too clear." Specifically, Khurana faults his appointed counsel for failing to "discuss the December 31, 2018, sworn statement showing [Khurana] could not have acted in contempt"; failing to "call [him] . . . to testify in his own defense"; and by putting "on no defense at all beyond briefly cross-examining some of the witnesses and presenting a closing argument of slightly less than two minutes in length." Khurana's arguments are unpersuasive.

The December 31, 2018, sworn statement is an apparent reference to the affidavit Khurana filed in response to the Department's motion for contempt in which he denied returning to the residence after issuance of the restraining order. Although the affidavit was not mentioned during the contempt trial, Khurana does not indicate how his appointed counsel could have referenced the affidavit in any useful manner over a hearsay objection by the Department. Indeed, the sole purpose Khurana identifies for referencing the affidavit would be to establish the truth of the matters asserted therein, making the document ostensibly inadmissible hearsay. *See* I.R.E. 801, 802. A defendant cannot be prejudiced by an attorney's failure to present inadmissible evidence. *See State v. Jones*, 160 Idaho 449, 452, 375 P.3d 279, 282 (2016) (observing that defendants are not entitled to present irrelevant evidence).

Khurana has similarly failed to show prejudice arising from the decision to refrain from calling him to testify. The only evidence in the record indicating the substance of Khurana's potential testimony is the December 31, 2018, affidavit. In that document, Khurana averred that he "used to live" in the residence but had "moved out with [his] personal belongings in the first week of December 2018 with the intent of never going back to the Location." Khurana further averred that he "did not return to the Property or the Building after the hearing of December 5th,

12

2018,"[9] and was "not aware of the condition of the property after the hearing." Assuming that Khurana's putative testimony in the contempt trial would have been consistent with his affidavit, there is no reasonable probability that such testimony would have led to a different result in the contempt trial. As noted, Khurana's inquiry regarding what he could take from the residence during the December 6, 2018, hearing indicated to the magistrate court that Khurana still had personal property in the residence. In light of this, it is unreasonable to conclude that the magistrate court might have found subsequent conclusory testimony to the contrary by Khurana credible.

Khurana's challenge to his appointed counsel's performance during the actual contempt trial is also unavailing. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Murray v. State*, 156 Idaho 159, 165, 321 P.3d 709, 715 (2014). The defense theory pursued by Khurana's appointed counsel centered on generating a reasonable doubt by highlighting the lack of evidence showing precisely when the damage to the residence occurred or when Khurana was observed removing property from the residence. This strategy did not require extensive cross-examination or a lengthy summation. Despite criticizing this strategy, however, Khurana has not identified an alternative strategy that would have resulted from additional consultation between himself and appointed counsel. Furthermore, in addition to conferring privately with appointed counsel prior to the contempt trial, Khurana conferred privately with his appointed counsel a second time during a break in the contempt trial. Immediately after that private conference, appointed counsel changed his tactic in cross-examining one of the Department's witnesses, inquiring further about a "shower surround" found in the back of a restaurant Khurana owned that had been damaged in a fire and revealing that the surround was too large to be the stand-up "shower enclosure" a neighbor observed Khurana removing from the residence. This indicates not only that, despite the allegedly deficient consultation, Khurana was able to participate in and contribute to his defense, but also that he was aware he could request additional time to confer with his counsel and suggest alternative strategies if he desired.

---

[9]     The reference to December 5, 2018, is presumably an inaccurate reference to the December 6, 2018, hearing during which the magistrate court orally pronounced the restraining order.

13

In sum, Khurana has failed to cite relevant portions of the record on appeal to support his arguments. This deficiency is sufficient to deem his ineffective assistance arguments waived. *See Groveland Water & Sewer, Dist.*, 169 Idaho at 941-42, 505 P.3d at 727-28. Even if not waived, Khurana has failed to show error in the district court's conclusion that he failed to show that any deficiencies in the performance of his appointed counsel in the contempt proceeding were prejudicial.

## C. Idaho Criminal Rule 54

Khurana argues that "the lower court erred by declining to evaluate [his] petition under [I.C.R.] 54." Not only did Khurana fail to include this issue in his statement of issues on appeal as required by I.A.R. 35(a)(4), he also failed to provide any citations to the record to support his factual allegations. Although the constraints of I.A.R. 35(a)(4) can be relaxed when argument and citations to authority are provided, Khurana's failure to provide citations to the record hampers appellate review by failing to clarify what "petition" he is referencing, when or why his request was rejected, or the applicability of I.C.R. 54 to his appeal. Khurana's failure to cite relevant portions of the record to support his arguments is sufficient to eliminate this issue from consideration on appeal. *See Groveland Water & Sewer, Dist.*, 169 Idaho at 941-42, 505 P.3d at 727-28 (observing that citations to the record are required to make any argument on appeal).

Moreover, Khurana fails to explain how this alleged error violated his substantial rights. Idaho Criminal Rule 54 establishes procedures for appeals from the magistrate division in criminal cases. Khurana concedes that "the lower court correctly allowed review" under I.R.C.P. 83, which establishes procedures for appeals from the magistrate division in civil cases. Khurana does not identify how appellate review under I.C.R. 54 would differ from appellate review under I.R.C.P. 83 such that failing to permit review under I.C.R. 54 violated one of his substantial rights. Khurana bears the burden of demonstrating that a substantial right was violated. *See* I.R.C.P. 61; *Harrentsian v. Hill*, 161 Idaho 332, 341, 385 P.3d 887, 896 (2016). Because Khurana has failed to demonstrate how this alleged error violated one of his substantial rights and he has not provided supporting citations to the record, he has waived this issue.

**IV.**

**CONCLUSION**

Substantial, competent evidence supports Khurana's conviction for twenty counts of contempt. Khurana has failed to cite relevant legal authority or relevant portions of the record to support his argument that he received ineffective assistance of counsel in the contempt proceedings. Notwithstanding these briefing deficiencies, Khurana has failed to show error in the district court's determination that he did not show prejudice arising from any alleged deficient performance by his appointed counsel. Khurana also waived any error premised on I.C.R. 54. Accordingly, the decision of the district court, on intermediate appeal from the magistrate court affirming the judgment of contempt for violating a restraining order, is affirmed.

Judge GRATTON and Judge HUSKEY, **CONCUR**.